# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYLER VAUGHAN,<br>    *Plaintiff*,<br><br>v.<br><br>JOHN ALDI *et al.*,<br>    *Defendants*. | No. 3:19-cv-107 (JAM) |

## RULING ON MOTION TO AMEND COMPLAINT AND INITIAL REVIEW ORDER

Plaintiff Tyler Vaughan has filed this lawsuit against various officials of the Connecticut Department of Correction ("DOC") arising from his placement in restrictive confinement as a pretrial detainee. By way of a proposed amended complaint, he alleges that he was wrongly subject to restrictive conditions of confinement under the DOC's Security Risk Group (SRG) program—a program that allows for detainees who are suspected of certain gang affiliations to be placed in more restrictive conditions of confinement.[1] For the reasons stated below, I will allow one of Vaughan's claims to proceed against two of the defendants in their individual capacities but will dismiss Vaughan's other claims.

### BACKGROUND

I have previously issued an initial review order with respect to Vaughan's initial complaint. Doc. #10; *Vaughan v. Aldi*, 2019 WL 1922295 (D. Conn. 2019). Vaughan has now filed a motion to amend his complaint, and I will grant this motion in light of the broad latitude afforded a plaintiff under Fed. R. Civ. P. 15 to file an amended complaint at the outset of litigation.

---

[1] *See* Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/DOC/AD/AD-Chapter-6 (last accessed December 2, 2019).

The amended complaint names the following five defendants in their official and individual capacities: John Aldi, SRG coordinator; Lieutenant Mendillo, SRG unit manager at New Haven Correctional Center ("NHCC"); Officer Pain, intelligence officer at NHCC; Correctional Officer Briatico at MacDougall-Walker Correctional Institution ("MWCI"); and Disciplinary Hearing Officer ("DHO") Melendez at MWCI.[2]

The following facts are alleged in the amended complaint (Doc. #18) and are accepted as true only for purposes of this ruling. Vaughan was arrested on December 8, 2017, and he was jailed as a pretrial detainee at NHCC. Doc. #18 at 2 (¶ 13). At the time of his arrest and confinement at NHCC, he was wearing a necklace of religious Santa Maria beads. *Ibid.*

On December 11, 2017, Vaughan was called to the lieutenant's office at NHCC to sign a document stating that "he had [a] beaded neckless [sic] in his possession upon arrest." *Id.* at 3 (¶ 14). Officer Pain and Lieutenant Mendillo questioned Vaughan about his necklace, particularly whether it signified his involvement in the "Bloods gang group." *Ibid.* (¶ 15). Vaughan denied the allegation and told the officials that he had completed the SRG program during his previous term of incarceration and had successfully denounced his affiliation with the "Bloods" gang. *Ibid.*

Despite his denials, Vaughan was handcuffed and placed in a restrictive housing unit ("RHU") on administrative detention status pending an SRG classification. *Ibid.* (¶ 16). Vaughan did not receive a disciplinary report or hearing stating the reasons for his restrictive confinement placement. *Ibid.* In this manner, the complaint alleges that Pain and Mendillo subjected Vaughan to punitive action to punish him for his religious beliefs. *Ibid.* (¶ 17). While in the RHU at

---

[2] Vaughan refers to "New Haven County Correctional" in his amended complaint, which I interpret to mean the New Haven Correctional Center, which is where he was first jailed. Vaughan's initial complaint also referred to defendant Pain as "Officer Payne." Doc. #1 at 5 (¶ 3).

NHCC, Vaughan was subjected to purposeless strip searches, limited to three showers and phone calls per week, and denied visitation privileges. *Ibid.* (¶16).

On December 29, 2017, Vaughan was transferred to MWCI where he was again placed on "Restrictive Housing Status" without a hearing and "pending a S.R.G. Affiliation." *Ibid.* (¶ 18). He was subject to the following restrictions: three showers per week, three phone calls per week, one hour of recreation five days per week, in-cell meals, and strip searches whenever he exited his cell. *Ibid.* No proper investigation was conducted and no disciplinary reports were issued. *Id.* at 3-4 (¶ 19). Vaughan was again allegedly punished because of his religious beliefs. *Ibid*.

Several months later, on May 2, 2018, Officer Briatico issued Vaughan an "SRG ticket" at MWCI. *Id*. at 4 (¶ 20). When Vaughan questioned Briatico about the ticket, Briatico told him that it was based on a book that was found in his cell that contained information associated with the "Bloods" gang. *Ibid.* Vaughan told Briatico that he had just moved into that cell, and the book was already in the cell when he moved in. *Ibid.* He also asked Briatico why he was the only inmate who received a ticket for the book after it was found inside a laundry bag amidst other books, and he stated that he had not been incarcerated long enough to accumulate such a collection of books. *Ibid.* (¶ 21). Briatico responded that he could not answer the question but that he had been instructed to issue the ticket. *Ibid.* The ticket resulted in Vaughan being placed in RHU for 33 days pending investigation. *Ibid.* (¶ 22).

Despite telling DHO Melendez that he did not know about the book, Vaughan was still subjected to disciplinary action based on the discovery of the book. *Ibid.* (¶ 24). His confinement in restrictive housing was extended as a result of the book discovery. *Ibid.* (¶ 25). While in the

RHU, Vaughan suffered a mental breakdown and emotional distress based on the disciplinary action regarding the book. *Ibid*. (¶ 23).

The complaint does not state how long Vaughan remained in RHU as a result of the discipline imposed or describe any particulars about the outcome of the SRG designation process. Vaughan alleges that he is presently incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"), and the complaint does not allege any facts about the conditions of his confinement there. *Id*. at 1 (¶ 6). Although I understand Vaughan's allegations to relate to his treatment as a pretrial detainee, the State of Connecticut Judicial Branch's website reflects that Vaughan has pleaded guilty in the meantime to several firearms charges and was sentenced to a five-year term of imprisonment. *See State v. Vaughan*, No. UWY-CR17-0448719-T (Conn. Super. Ct. May 17, 2019).

The complaint seeks money damages against the defendants. It also seeks injunctive relief for Vaughan "to place me back in population, remove me from the computers as S.R.G., and restore all my privileges lost." Doc. #18 at 5.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, a district court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Official capacity claims*

Vaughan alleges claims against all the defendants in their official and individual capacities. As to Vaughan's claims for money damages against the defendants in their official capacities, because they are state employees, the defendants are entitled to the benefit of the State of Connecticut's sovereign immunity with respect to these claims for money damages. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, I will dismiss all claims for money damages against the defendants in their official capacities.

As to Vaughan's claim for injunctive relief against the defendants in their official capacities, a plaintiff may maintain this type of claim only to the extent that he alleges that a state official is engaged in an ongoing violation of the plaintiff's constitutional rights for which a court may enter an order of prospective relief against a state official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Vaughan has not alleged facts to show an ongoing violation of his constitutional rights by any of the defendants. He has alleged that his rights were violated when he was at NHCC in 2017 and then again at MWCI in 2018, but he alleges that he is now

5

incarcerated at a different facility (Corrigan), and he does not allege he is being held under restrictive conditions there. Doc. #18 at 1.

Because Vaughan does not allege any facts to suggest a plausible connection between any of the defendants and his current conditions of confinement, I will dismiss his claims for injunctive relief against the defendants in their official capacities. To the extent that I previously allowed Vaughan's official capacity claim against defendant Aldi to proceed, *see Vaughan v. Aldi*, 2019 WL 1922295 (D. Conn. 2019), I now reconsider this ruling in light of the allegations in Vaughan's amended complaint, which fail to show any ongoing violation of Vaughan's rights or any connection between Aldi and Vaughan's past or current conditions of confinement.

The balance of this ruling will address Vaughan's claims against each of the defendants solely in their individual capacities.

### *Due process right of pretrial detainee not to be subject to punitive restrictive confinement without a hearing*

Vaughan alleges that his due process rights as a pretrial detainee were violated because he was subject to punitive SRG restrictive confinement. Liberty restrictions on a pretrial detainee may not amount to punishment of the detainee, and a pretrial detainee who is placed in segregation for *administrative* reasons is entitled to "some notice of the charges against him and an opportunity to present his views." *Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). But procedural due process requires that pretrial detainees can only be subjected to *punitive* segregation or other heightened restraints if a pre-deprivation hearing is held to determine whether any rule has been violated. *See Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010). In addition, substantive due process requires that

restrictions on pretrial detainees be reasonably related to a legitimate goal. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017).

As to defendants Mendillo and Pain, the complaint alleges that they took actions to place Vaughan in RHU at NHCC without a hearing and despite Vaughan's protestations that he was not a gang member, although the complaint does indicate Vaughan was verbally questioned by Pain and Mendillo about his necklace. Because a pretrial detainee may not be subjected to punitive segregation without a pre-deprivation hearing, and taking as true Vaughan's allegations that his segregation at NHCC was punitive in nature, at this very initial stage, these allegations suffice to allege a violation of his due process rights.

As to defendant Briatico, the complaint alleges only that Briatico served Vaughan with a ticket at the direction of unnamed others stemming from an investigation of a book that was found in Vaughan's cell when he was at MWCI. Inmates have "no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). "The inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." *Velez v. Burge*, 483 Fed. Appx. 626, 628 (2d Cir. 2008). Thus, "[t]he mere issuance of a disciplinary ticket does not rise to the level of a federal or constitutional violation." *Carolina v. Murray*, 1997 WL 317319, at *2 (D. Conn. 1997).

The complaint does not allege that Vaughan was deprived of a hearing with respect to the ticket that was served on him by Briatico, much less that Briatico took any acts to deprive him of a hearing. Accordingly, Vaughan has not alleged plausible grounds for relief against Briatico as to the violation of his due process right to a hearing.

7

As to defendant Melendez, Vaughan alleges that Melendez did not believe his claim that he was not responsible for the book that was found in his cell. But the fair inference from the complaint—and its allegation that Melendez was a disciplinary hearing officer—is that Vaughan indeed received a hearing. The complaint's allegations against Melendez are otherwise very sparse and do not plausibly establish that Melendez did anything to violate Vaughan's due process rights at MWCI. The fact that Melendez did not believe Vaughan's protestations of innocence does not—standing alone—establish plausible grounds to believe the Melendez violated Vaughan's due process rights.

As to defendant Aldi, Vaughan alleges only that he was "the S.R.G. (Security Risk Group) coordinator" and "answerable for the S.R.G. Program, Policies, Rules, Regulations, designation and placement." Doc. #18 at 2. The complaint does not allege any personal involvement by Aldi in any of the alleged actions that were taken against Vaughan. Because the complaint does not allege facts showing Aldi's personal involvement, I will dismiss Vaughan's due process claim against Aldi. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (liability for constitutional violation under 42 U.S.C. § 1983 requires evidence of individual defendant's personal involvement in constitutional violation).

### *Conditions of confinement*

Vaughan alleges that he was subject to severely restrictive conditions of confinement while detained at the restrictive housing units at both NHCC and MWCI. A pretrial detainee has a right not to be subject to unconstitutional conditions of confinement that deprive the detainee of necessities such as food, clothing, or shelter, or that otherwise endanger the detainee's life or health. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). But, as the Second Circuit has made clear, a conditions-of-confinement claim requires allegations that the defendant "acted

intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 34.

Although the complaint alleges onerous conditions of RHU confinement at both NHCC and MWCI, there is no need to decide if these conditions fell below minimum constitutional levels, because the complaint does not allege any facts to suggest that any of the named defendants had personal involvement with or control over these RHU conditions of confinement. The complaint alleges only that defendants took actions that resulted in Vaughan's placement in RHU, not that they exercised any control over the restrictions and conditions he encountered there. Accordingly, Vaughan has not alleged facts that suffice to establish plausible grounds for relief against any of the defendants as to the conditions of confinement to which he was subject while in the RHU at NHCC or MWCI.

### *Fourth Amendment claim*

Vaughan alleges that he was subject to purposeless strip searches in connection with his RHU confinement. Pretrial detainees retain a Fourth Amendment right to bodily privacy consistent with the security needs of a prison facility. *See generally Harris v. Miller*, 818 F.3d 49, 57-63 (2d Cir. 2016) (*per curiam*) (discussing multiple factors to be considered for prisoner's claim of Fourth Amendment violation from visual body cavity search). But, as with Vaughan's conditions-of-confinement claim, I need not consider whether he was subject to unconstitutional searches because he has not alleged facts to show that any of the individual defendants were personally involved with any of the searches that he experienced as part of his RHU confinement.

*First Amendment retaliation claim*

Vaughan alleges that the defendants subjected him to RHU confinement and other adverse conditions because of his religion. The sole basis for his claim is that, upon his arrest and admission to NHCC, he was wearing "religious 'Santa Maria Beeds [sic],'" and that defendants Pain and Mendillo "questioned him about Religious Beeds 'Santa Maria Spiritual Beeds [sic].'" Doc. #18 at 2-3 (¶¶13-17).

Prison officials may not retaliate against a prisoner because of the prisoner's exercise of First Amendment rights, such as the free exercise of religion and religious beliefs. "To establish a First Amendment retaliation claim, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). For this reason, a prisoner's First Amendment retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Ibid.*

In light of these standards, Vaughan has not alleged plausible grounds to conclude that any of the defendants violated his First Amendment rights. Although Vaughan alleges that Pain and Mendillo questioned him at NHCC about his necklace, he does not allege specific and detailed facts to suggest that the adverse actions taken against him by Pain and Mendillo were because of any religion-based animosity. To the contrary, Vaughan alleges that Pain and

Mendillo questioned him about whether the necklace was a sign of his gang affiliation. Vaughan does not otherwise allege facts to suggest any link at all between his religion and the alleged adverse actions of Briatico and Melendez at MWCI. Accordingly, I will dismiss Vaughan's First Amendment retaliation claim.

### CONCLUSION

(1) The motion to amend the complaint (Doc. #18) is GRANTED. The Clerk of Court is directed to docket Doc. #18 as a separate entry entitled, "Third Amended Complaint." The motion for default entry (Doc. #23) is DENIED as moot.

(2) The Clerk is directed to correct the case caption to name the following defendants in this action: John Aldi, Lieutenant Mendillo, Intelligence Officer Pain, Correction Officer Briatico, and Disciplinary Hearing Officer Melendez.

(3) This action shall proceed solely as to Vaughan's due process claim against defendants Pain (Payne) and Mendillo in their individual capacities. All other claims against the defendants are dismissed in their entirety.

(4) The Clerk shall verify the current work addresses for Pain (Payne) and Mendillo with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the third amended complaint to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(5) Pain and Mendillo shall file their response to the third amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(6) The Clerk shall send a courtesy copy of the third amended complaint and this Order to the DOC Office of Legal Affairs.

(7) The discovery deadline is extended to **six months (180 days)** from the date of this Order. The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order.

(8) The motion to depose Vaughan, Doc. #21, is GRANTED pursuant to Fed. R. Civ. P. 30(a)(2)(B). Defense counsel shall make all necessary arrangements to conduct the deposition.

It is so ordered.

Dated at New Haven, Connecticut this 2d day of December 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge